UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    V.                                   12 Cr 301 (DCF)

JUSTIN CONNORS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


# SENTENCING MEMORANDUM ON BEHALF
# OF DEFENDANT JUSTIN CONNORS


JOYCE C. LONDON,P.C.
20 Vesey Street, Suite 400
New York, NY 10007
Tel: (212) 964-3700

*Attorney for Defendant*
*JUSTIN CONNORS*


UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

     V.                                    12 Cr 301 (DCF)

JUSTIN CONNORS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

### SENTENCING MEMORANDUM ON BEHALF
### OF DEFENDANT JUSTIN CONNORS

This Sentencing Memorandum is submitted on behalf of defendant Justin Connors to present factors pursuant to 18 U.S.C. § 3553(a) for the Court's consideration at sentencing and to address the June 13, 2012 letter to the Court submitted by prior counsel, David Gordon, Esq.[1] regarding a fraudulent letter submitted by the defendant to both the government and probation.

**I.**      **BACKGROUND**

Mr. Connors is a twenty-three year old young man who has been somewhat adrift in his adult life, both with respect to establishing a career and with respect to his personal relationships since the death of his mother while he was still a teenager.   He has, however, the support of a loving, but, at times, dominating and misguided father, Richard Connors, who desperately wants the best for his son, but, who does not always exercise sound judgment in trying to assist his son, as will be detailed *infra*.   Complicating and certainly influencing Richard Connor's judgment is the fact that he is ill with kidney cancer and believes that his life expectancy is very limited.

---

[1]     A copy of David Gordon Esq's letter to the Court dated March 13, 2012 is attached hereto as Exhibit A.

On April 18, 2012, Justin Connors entered a plea of guilty to a one-count information which charged him with aiding and abetting the filing of a false immigration registration application, a Class B misdemeanor in violation of 8 U.S.C. §§ 1302(a) and 1306© and 18 U.S.C. § 2. Since the offense to which Mr. Connors has pled guilty is a misdemeanor, the sentencing guidelines do not apply.  See USSG § 1B1.9.  Statutorily, he faces a maximum sentence of six (6) months imprisonment.

## II.     THE FRAUDULENT LETTER

The fraudulent letter ("the Navy letter") concerns a letter dated January 21, 2012 and purportedly written by William K. Robb, a U.S. Navy Recruiter working out of the Colonie Center Mall recruitment office in Albany New York.  The Navy letter was originally submitted by Mr. Connors' prior counsel to the government, as part of a submission to obtain either a deferred prosecution or, alternatively,  a misdemeanor plea for Mr. Connors.  A copy of the Navy letter is attached hereto as Exhibit B.  The facts and circumstances leading to the submission of this letter are as follows:

As noted in the Pre-Sentence Report ("PSR"), defendant Justin Connors' mother died of lung cancer when Justin, the family's only child, was still in high school.  Justin spent many hours caring for her as his father spent long hours away from the house working as a truck driver.  After the death of his mother, Justin seemed to be "lost" and his father constantly worried about him.  Although Justin consistently worked, he did not appear to have solid career goals and his personal relationships were problematic.  Richard Connors' worries then escalated to deep concern, when he was diagnosed with kidney cancer, and eventually had to have one kidney removed and begin a course of chemotherapy treatment.  Driving the concern was the

fact that Richard Connors believed his life expectancy was very limited and he wanted to see his son established in a viable career before he died.  He therefore repeatedly urged Justin to enlist for a career in the military believing this would provide Justin both with a career and an anchor in his life.

Justin heeded his father's advice and contacted the Navy Recruiting Station in Middletown New York about eight months ago and obtained an interview.  He was advised by the Middletown recruiter that in order to be accepted for enlistment in any branch of the armed services, he would have to pass the "ASDAB" test.  On the advice of the recruitment officer, he took an online pre-qualifying ASDAB test.  This test involved mathematical, technology, mechanical and English skills.  His test results revealed that he had done well overall and was ready for the actual ASDAB test, although it was recommended that he should do some more studying with respect to the English segment of the test.   In light of these results, Justin returned to the Middletown Navy Recruiting Station to discuss his situation and was interviewed by Navy Recruiter Julian Reynolds. [2]  He was informed by Mr Reynolds that a felony conviction would preclude him from enlistment, but that if the case against him were to be dismissed, he would be immediately eligible for recruitment.  He was further informed that if he were to receive a misdemeanor conviction, enlistment would be problematic but not necessarily out of the question.  However, Mr Reynolds emphasized that Justin would not even be considered as a candidate for enlistment until all aspects of the case were including any term of probation or supervised release.

---

[2]      Current counsel has spoken personally with Navy Recruiter Reynolds and confirmed that Justin Connors talked to him about enlisting and how the current charges would affect his ability to enlist.

4

When Justin's father learned this information, he decided to take steps to help his son obtain a deferred prosecution in the instant matter in order to ensure that his son would be eligible to enlist in the Navy.  Richard Connors contacted a close friend who had relatives in the Navy, explained Justin's situation and asked if he could do anything to help Justin.  The instant letter ensued (see Exhibit B).  Justin,  himself, neither solicited the letter nor suggested to his father that his father try to intervene on his behalf.  However, Justin was aware of how the Navy letter was obtained and provided it to his former attorney so that it could be submitted in support of his application for a deferred prosecution.  A letter from Richard Connors, Justin's father, detailing the circumstances of the letter is attached hereto as Exhibit C.[3]  Significantly, the fact that the Navy letter was fraudulently obtained was disclosed to Justin's prior counsel by Richard Connors.

Paragraph 24 of the PSR states that "Connors submitted a fraudulent letter, dated January 21, 2102 from the United States Army office in Albany, New York. . ."  This is an error.  The letter was from the Navy recruitment office.  The paragraph further states that "[]it is apparent that CONNORS fabricated this letter in an effort to obstruct the administration of justice."  PSR ¶ 24.  Based on the information detailed above, this paragraph should be amended to read that Connors submitted, rather than fabricated this letter in an effort to obstruct the administration of justice.

The relationship between Justin Connors and his father is complex and at times troubling. On the one hand, the father urges and actually pushes Justin to be independent and forge a career

---

[3]        This letter was sent to counsel in the form of an email but is addressed to the Court.

for himself.  On the other hand, the father is extremely controlling and want to ensure that he micro-manages every step of Justin's life. If Justin takes any steps to avoid the control and make his own decisions, then his father takes counterbalancing steps to undermine any decisions Justin has made on his own.   This "push-me/pull-you" relationship is obvious in the Navy letter situation where it is Justin's father who pro-actively obtained the Navy letter, who insisted that Justin provide it to his lawyer for submission in support of the deferred prosecution, and who then, several months later,  informed Justin's lawyer of how the letter was obtained.

Justin is still anxious to pursue some form of military career.  He understands that a career in the navy will not be possible.  However, on the advice of Julian Reynolds, the Navy Recruiter with whom he interviewed, he has contacted the New York National Guard with a view to becoming a citizen/soldier and was interviewed by Staff Sergeant Anthony Morales from the Middletown recruiting station.[4]  Although it is questionable whether Justin will be accepted into the New York National Guard, Sergeant Morales advised him to re-interview once he has fully completed any sentence (including probation or supervised release), although there is no guarantee that he will be accepted into the service.  Certainly, his eagerness to serve his country in the armed services is a worthwhile way for him to atone for his illegal conduct in this case and serve the best interests of society.

## III.   THE 18 U.S.C. § 3553(a) FACTORS

In imposing sentence, the Court must consider the factors set forth in 18 U.S.C. § 3553(a), which include:

---

[4]    Counsel has confirmed that Justin spoke to Sergeant Morales regarding enlistment in the New York National Guard.

(1)     the nature of and circumstances of the offense and the history and characteristics of the defendant;

(2)     the need for the sentence imposed –

    (A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B)     to afford adequate deterrence to criminal conduct;

    ©     to protect the public from further crimes of the defendant; and

    (D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)     the kinds of sentences available;

(4)     the advisory Guidelines range;

(5)     any pertinent policy statements issued by the Sentencing Commission;

(6)     the need to avoid unwarranted sentence disparities; and

(7)     the need to provide restitution to any victims of the offense.

*Id.* After considering all of those factors, this Court must "impose a sentence sufficient, *but not greater than necessary*, to comply with the purposes set forth in paragraph (2)." *Id.* (Emphasis added).

## 1.     The Nature and Circumstances of the Offense

The nature and circumstances of ths offense are set forth in the PSR and will not be repeated herein.  See PSR ¶¶ 8-24.

## 2.     The History and Characteristics of the Defendant

As detailed in the PSR and above, Justin Connors' life appears to have been profoundly influenced in his teenage years.  As an only child and while still in high school, he shouldered the responsibility for the care of his mother while she was dying of lung cancer.  After her death,

his life has been somewhat adrift.  Although he has consistently worked, consistently filed tax

returns and paid his taxes, he has not yet established a career for himself.  He has, however,

received vocational training in auto mechanics and successfully worked in this field.  His

personal relationships have been fraught with problems and insecurity - when what Justin strives

for in his life are love and security.  Although his father genuinely loves Justin and wants the

best for him, he is both a positive and detracting influence in Justin's life.  In short, Justin

Connors is still a young man struggling with maturity and independence.  Compounding his

personal struggles is the fact that he has had to come to grips with his father's terminal illness

and the fact that independence will be thrust upon him when his father dies - whether he is ready

for it or not.   As noted in Richard Connors' letter to the Court, Justin has no siblings and no

other family members.  Certainly, Justin has been trying to do his best under overwhelming

circumstances but the only family support he has is likely to be taken from him all too soon and

he is acutely aware of this.

**3.**      **Other Sentencing Considerations**

Justin Connors is truly remorseful for his involvement in the instant offense.   He has

learnt a painful lesson as a result of both the offense and the Navy letter situation  - the lesson

being the importance of just saying "no" even if this means standing up to a beloved relative.

Not only has his conduct resulted in a federal misdemeanor conviction, it has, in all likelihood,

cost him the ability to have a career in military service.

It seems apparent from Justin's life history and the future difficult circumstances

regarding his father's health that surely await him that he could benefit from psychological

counseling so that he has an independent anchor in his life to discuss his concerns and problems.

8

with.

**4.    Kinds of Sentences Available**

Having pled guilty to a misdemeanor offense, Justin Connors is not facing a mandatory term of imprisonment. Although the PSR initially recommended a sentence of probation, that recommendation has been revised in light of the Navy letter and the PSR now recommends a six (6) month term of imprisonment.

It is respectfully requested that the Court consider alternative available sentencing options, such as a term of confinement in a community halfway house, a period of home detention with electronic monitoring, or a period of community service so that Justin can continue to work and can also be available to assist his father by driving him to medical and treatment appointments.

**IV.    NO FINE SHOULD BE IMPOSED**

Based upon Justin Connors' financial profile, it is respectfully submitted that he does not have the assets with which to pay a fine and that no fine should be imposed.

**V.    A REASONABLE SENTENCE**

As set forth above, the so-called "parsimony clause" of 18 U.S.C. §3553(a) requires this Court to impose a sentence which is "sufficient, but not greater than necessary" to satisfy the factors set forth in 18 U.S.C. §3553(a)(2). If this Court were to "conclude that two sentences equally served the statutory purpose of §3553, it could not, consistent with the parsimony clause, impose the higher." United States v. Ministro-Tapia, 470 F.3d 137, 142 (2d Cir. 2006). It is respectfully submitted that given all the facts and circumstances of this case, as detailed herein and in the PSR, a sentence of either home detention with electronic monitoring, a period of

confinement in a community halfway house or community service would constitute a reasonable sentence. A non-custodial sentence would enable Justin to continue working and continue assisting his father who is seriously ill.

**VI.**     **CONCLUSION**

For all the reasons set forth herein, it is respectfully submitted that a sentence of either home detention or a period of time to be spent in a community halfway house would represent a sentence which is sufficient but not greater than necessary to satisfy all the statutory sentencing factors which the Court is required to consider.

Dated: New York, New York
      August 16, 2012

Respectfully submitted,

/s/

JOYCE C. LONDON
20 Vesey Street, Suite 400
New York, NY 10007
Tel: (212) 964-3700

*Attorney for Defendant*
*JUSTIN CONNORS*